## APRIL TERM, 1851.

### WILLIAM HOWARD vs. GEORGE F. HUBERTSON.

The Court laid down several rules relating to the postponement of trials.
A ship, if pawned, cannot be used by the pawnee without the consent of the pawner.

This was an action brought to recover the value of certain vessels, which the plaintiff alleged he placed in the defendant's hands, as a pledge or security for his appearance at the last January term of this Court, Mr. Hubertson having signed his bail bond. He further alleged that notwithstanding he made his appearance at the time named in the bond, yet the defendant refused to restore the vessels.

The defendant's counsel moved for a continuance of the trial, on the usual affidavit of the absence of a material witness, who would swear that one of the vessels set forth in the plaintiff's petition, was never pawned to the defendant. This motion was opposed by Howard's counsel, and the Court laid down the following rules relative to the postponement of trials.

1. At least two days notice of an intended application to put off a trial should be given to the plaintiff's attorney, with a copy of the affidavit to be produced as a foundation for the motion, if the necessity for it was at that time known to the defendant.

2. When the ground of the application is the absence of a material witness, the affidavit should state the name of the witness, the facts he is expected to prove, and that without his testimony the defendant cannot safely proceed to trial. It should also state what exertions have been used to procure the desired evidence, and at what time the witness is expected to return.

3. Where the adverse party admits, that the absent witness would, if present, testify to the facts stated in the affidavit, a continuance will not be granted.

The plaintiff's counsel admitted the facts which the defendant stat-

ed that he expected to prove by the absent witness, and the Court ruled the parties to proceed to trial.

It appeared in evidence that Howard being arrested and imprisoned on a charge of assault and battery, gave bail for his appearance at the last January term, and that Hubertson became his bondsman. That to secure Hubertson from loss, Howard placed in his hands the lorcha Premier, of which he owned one half. and also the schooner Kalama. That on the same day they were delivered, the lorcha was sold, with Howard's consent, at auction, for $1600, and a moiety of the purchase money was paid over by the auctioneer to Hubertson. That soon after the schooner was sent to Niihau, and on her return was wrecked on the reef off Waikiki. Whether the vessel was running with Howard's consent, or whether on his, or Hubertson's account, did not clearly appear, though there was some evidence on both sides. The value of the schooner was proved to be about $1500.

The counsel for the plaintiff contended that the schooner was under Hubertson's direction, and running on his account, and that Howard ought to recover her value, in addition to the moiety of the Premier.

Defendant's counsel contended that clearly, from the evidence, the schooner was running at the risk of Howard.

CHIEF JUSTICE LEE charged the jury, that this case was one governed by the law of pawns and pledges. The plaintiff by making his appearance at the January term, fulfilled the conditions of the bail bond, and is clearly entitled to receive the $800 as the moiety of the Premier. Whether he is entitled to recover the value of the schooner Kalama is quite another question. That portion of the law of pawns or pledges, relating to the use of the article pawned, is laid down by Judge Story as follows: 1. If the pawn is of such a nature that the due preservation of it requires some use, there, such use is not only justifiable, but it is indispensable to the faithful discharge of the duty of the pawnee. 2. If the pawn is of such a nature, that it will be worse for the use, such. for instance, as the wearing of clothes, which are deposited, there, the use is prohibited to the pawnee. 3. If the pawn is of such a nature that the keeping is a charge to the pawnee, as, if it is a cow or a horse, there, the pawnee may milk the cow and use the milk, and ride the horse by way of recompense, for the keeping. 4. If the use will be beneficial to the pawn, the pawnee it seems may use it. 5. If the use will be without any injury, and yet the pawn will thereby be exposed to extraordinary perils, there, the use is impliedly interdicted

In this case the pawn or pledge was a vessel, which would probably take more injury from worms and other causes by lying in the harbor, than by moderate use at sea, but, as by such use it would be exposed to extraordinary perils, as the result has proved, the pawnee could not sail it except at his own risk. I know of no case in the books where the pawn has been a vessel, but the Court is clearly of the opinion, that a ship is a pawn of such a nature as to forbid its use without the consent of the pawner. Whether the vessel was running with Howard's consent and on his account, or without his consent, and on Hubertson's account, does not clearly appear. The evidence is not full on this point, but it is for you to determine. If you find it

was running without Howard's consent, and under the direction of the defendant, then the plaintiff is entitled to recover its value, in addition to the $800; if with his consent, then her loss must fall upon Howard.

The jury after an absence of six hours returned a verdict for the plaintiff in the sum of $1100.

Mr. Harris and Mr. Burbank for plaintiff.

Mr. Bates and Mr. Montgomery for defendant.